FILED
2019 Aug-15  PM 01:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF ALABAMA
## MIDDLE DIVISION

NATIONWIDE MUTUAL INSURANCE COMPANY,
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
and NATIONWIDE GENERAL INSURANCE COMPANY,

      Plaintiffs,

v.                                  4:19:cv-01019-ACA

DAVID J. BARROW, ANN BARROW, & A.B.,
a minor, by and through her next friend and parent,
J. B.

      Defendants.

### DEFENDANT A.B.'s MOTION IN RESPONSE TO
### NATIONWIDE'S COMPLAINT FOR DECLARATORY JUDGMENT

A. B., a minor, by and through her next friend and parent, J. B., moves to dismiss that portion of Nationwide's Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) regarding Nationwide's duty to indemnify David Barrow because the issue of indemnity is not ripe.

As to Nationwide's Complaint seeking a declaratory judgment regarding its duty to defend its insured David Barrow, this issue should be decided in favor of requiring Nationwide to defend its insured, as Nationwide owes a defense as to A.B.'s claims of false imprisonment and invasion of privacy.

Lastly, as to Nationwide's claim that Nationwide failed to receive "prompt notice" of A.B.'s claims, that is an issue that is a question of fact.

**DISCUSSION**

Those insurance companies, collectively referred to in the Complaint for Declaratory Judgment as Nationwide, seek a determination that Nationwide does not owe defense or indemnity to its insured David Barrow for the reason that A. B.'s personal injuries were not the result of an "occurrence" as defined by the policy;  that A.B.'s claims are excluded under the intentional acts exclusion, criminal acts exclusion, and sexual misconduct exclusion.  Lastly, Nationwide states that it did not receive prompt notice of A. B.'s claims.

A.B. has asserted two claims against David Barrow in the state court action that are expressly covered in the umbrella policy issued by Nationwide to Barrow, that is, invasion of privacy and false imprisonment, both intentional torts.  (Paragraph 34 of the Complaint for Declaratory Judgment).

**The issue of whether Nationwide has a duty to indemnify David Barrow is not yet ripe and, thus, must be dismissed for failure to identify any actual controversy.**

A.B. has not obtained a judgment against Nationwide's insured, David Barrow, in the underlying state court lawsuit.  Therefore, this Court lacks subject matter jurisdiction over the issue of whether Nationwide owes indemnity as there is no justiciable case or controversy.

This same issue was discussed in a recent case: *Canal Ins. Co. v. INA Trucking, LLC* CASE NO. 1:16cv82-MHT-SRW (M.D. Ala. Mar. 10, 2017):

> [T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit.")(quoting *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir.1995)); *see also Accident Ins. Co. v. Greg Kennedy Builder, Inc.,* 159 F. Supp. 3d 1285, 1293 (S.D. Ala. 2016)("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insured's liability to the movants.")(quoting *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg, Inc.*, 387 F. Supp. 2d

2

1205, 1211-12 (S.D. Ala. 2005)). When a claim is not "ripe," there is no justiciable case or controversy, and the court lacks subject matter jurisdiction over that claim. *Colony Ins. Co. v. Griffin*, 2007 WL4181738, at (M.D. Ala. Nov. 26, 2007) (dismissing a duty to indemnify claim instead of staying resolution of the claim pending adjudication of an underlying state court action because the indemnity claim does not constitute a ripe "case or controversy" within the court's jurisdiction).

The Declaratory Judgment Act, consistent with Article III of the U.S. Constitution, provides that the federal courts may issue declaratory judgments only "[i]n a case of actual controversy." 28 U.S.C. § 2201; *Walden v. Ctrs. For Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012).

This is true even if the insurer seeks a declaration regarding the duty to defend at the same time; while the issue of the duty to defend may be ripe and justiciable during the tort lawsuit, the duty to indemnify must not be addressed until after there is an actual judgment for which indemnification may be sought. *See Am. Fid. & Cas*., 280 F.2d at 461; *Nationwide Mut*., 651 F. Supp. 2d at 1373.

**Nationwide Owes a Duty to Defend David Barrow in the Underlying Suit, and Its Complaint Fails to State a Claim to the Contrary.**

A.B.'s allegations of "invasion of privacy" and "false imprisonment" fall squarely within the offenses listed in David Barrow's umbrella policy.

As such, Nationwide owes a duty to defend its insured, at least Nationwide owes a defense as to those two specific offenses listed in the policy, that is, false imprisonment and invasion of privacy, as explained by the Supreme Court of Alabama:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or

occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between [the injured person] and the insured prove a covered accident or occurrence. *Acceptance Ins. Co. v. Brown*, 832 So.2d 1 (Ala. 2001)]; *Run-A-Ford, supra*; *Ladner, supra*. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence. E.g., *Acceptance Ins. Co., supra; Porterfield v. Audubon Indem. Co.*, 856 So.2d 789 (Ala. 2002)]; *Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So.2d 360 (Ala. 1995)."

\* \* \*

'[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured.' *Blackburn v. Fidelity Deposit Co. of Maryland*, 667 So.2d 661, 668 (Ala. 1995) (citing *United States Fid. Guar. Co. v. Armstrong*, 479 So.2d 1164 (Ala. 1985)) (other citations omitted). When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. *Blackburn*, 667 So.2d at 670 (citing *Tapscott v. Allstate Ins. Co.*, 526 So.2d 570, 574 (Ala. 1988))."

*Tanner v. State Farm Fire Cas. Co.*, 874 So. 2d 1058, 1064 (Ala. 2003).

**The Umbrella Policy is Ambiguous and, therefore, must be Interpreted Against Nationwide.**

Under Alabama law,

[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different construction does not mean that the disputed language is ambiguous.

4

*Woodall v. Alfa Mutual Ins. Co.,*658 So.2d 369, 371 (Ala. 1995) ( quoting *Gregory v. Western World Ins. Co.,*481 So.2d 878, 881 (Ala. 1985)).   However, also under Alabama law . . . insurance contracts are to be considered "liberally in favor of the insured and strictly against the insurer," and exclusions from coverage contained in insurance policies are to be interpreted narrowly in order to provide for maximum coverage. *United Services Auto. Asso. v. Vogel,* No. 2970194, 1998 WL 414480, at *2 (Ala.Civ.App. July 24, 1998) ( *quoting Allstate Ins. Co. v. Skelton,*675 So.2d 377, 379 (Ala. 1996)). The court in *Vogel* explained the policy underlying this rule.

> An insurance policy is written by the insurance company. Most insureds depend upon the company to provide the coverage they seek. When doubt exists whether coverage is provided, the language used by the insurer must be construed for the benefit of the insured. Likewise, where ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording.

Vogel, 1998 WL 414480, at *3 ( citations omitted).

*Titan Indem. Co. v. Newton,* 39 F. Supp. 2d 1336, 1344 (N.D. Ala. 1999).

Here, Nationwide provided an Umbrella policy which widened the scope of coverage, over and above Nationwide's primary automobile and homeowner policies.  Whereas Barrow's homeowner's policy provided coverage for "bodily injury," it did not provide coverage for those claims categorized as "personal injury."

The Umbrella Policy states:

**Coverages**

**EXCESS LIABILITY INSURANCE**

We will pay for damages an insured is legally obligated to pay due to an occurrence in excess of: a) the retained limit; plus, b) any other liability insurance available to an insured which applies to an occurrence.

The bodily injury or property damage must occur during this policy's term. The personal injury must be due to an offense committed during this policy's term.

1. CLAIMS DEFENSE

    a)  We will defend a suit against an insured, with attorneys of our choice, resulting from an occurrence covered by this policy. This applies even if the suit is groundless. However, we will not defend the insured:

        (1)  if the occurrence is covered by the Required Underlying Insurance or other insurance the insured has, unless such coverage is exhausted by payments; or

        (2)  for any amount within the limits you should have, but failed to maintain, in the Required Underlying Insurance.

Nationwide's Umbrella Policy defines an Occurrence as follows:

5.  **Occurrence(s)** means an accident including continuous or repeated exposure to the same general conditions. It must result in **bodily injury**, **property damage**, or **personal injury** caused by an insured. The **occurrence** resulting in **bodily injury** or **property damage** must be during the policy period. The **occurrence** resulting in the **personal injury** must be due to an offense committed during the policy period.

6.  **Bodily injury** means bodily harm, including resulting sickness, disease, or death. Bodily injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

\* \* \*

8.  **Personal injury** means:

    a) false arrest, false imprisonment, wrongful conviction, wrongful entry;

    b) wrongful detention or malicious prosecution;

    c) libel, slander, defamation of character, or invasion of rights of privacy.

**The Umbrella Policy, as Written, Portends Coverage for Intentional Torts and Claims Arising out of Criminal Acts.**

Note that Nationwide chose to employ the word **occur** (see the definition above for **Occurrences**, that is, an accident) as it relates to **bodily injury** claims and Nationwide chose not to use the word **occur** in relation to personal injuries, but instead chose the word **offense**, that is, a violation of law or a criminal act.

Further, under COVERAGES, Nationwide wrote its policy as follows:

> The **bodily injury** or **property damage** must occur during this policy's term. The **personal injury** must be due to an offense committed during this policy's term.

Nationwide makes a significant distinction, above, between bodily injury and personal injury claims, as the bodily injury must "occur" and the personal injury must be due an offense committed.

Nationwide chose to define "occurrence," but it chose not to define the word "offense." So, as to its ordinary usage and meaning, the word "offense" is defined in Webster's as "something that outrages the moral or physical senses," "the act of attacking," "the act of displeasing, affronting, or angering," or "**an infraction of law**."

And, in Black's Law Dictionary, 8th Ed., "offense" is defined as

> 1. **A violation of the law; a crime, often a minor one**.
>
> See CRIME. — Also termed criminal offense. **"The terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably**. 'Offense' may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony' or with 'misdemeanor,' as the case may be, or as signifying a crime of lesser grade, or an act not indictable, but punishable summarily or by the forfeiture of a penalty.

It makes sense that Nationwide, in providing coverage for specific intentional torts and, ostensibly, criminal acts, would characterize those torts as an "offense."  To characterize a **personal injury**, as defined by the Nationwide policy, as an accident, would be non-sense.  No one accidentally commits an intentional tort and, only on extremely rare occasion, accidentally commits a crime.

When we interpret the language in Nationwide's Umbrella Policy on page C1, directly under COVERAGES, accurately and specifically, it should read as follows:

> The **bodily injury** or **property damage** must occur during this policy's term. The **personal injury** [resulting from one of the 10 listed intentional torts] must be due to an offense [that is, a violation of law or a crime] committed during this policy's term.

 Despite issuing a policy expressly promising to cover intentional torts and offenses (that is, violation of laws or criminal acts) and promising further to defend its insured "[e]ven if the suit is groundless," Nationwide now seeks to be relieved from any obligation to defend claims for personal injuries arising out of the specifically listed intentional torts of false imprisonment and invasion of privacy.

Nationwide's argument that these claims were not an occurrence (that is, were not an accident) and, further, that these claims are excluded by the intentional acts and criminal acts exclusions, render the personal injury coverages for intentional torts, a nullity.   As one court observed, an insurance policy that provides coverage for specifically enumerated intentional torts, but only if they are committed unintentionally is "complete nonsense."  *Lincoln Nat. Health and Cas. Ins. v. Brown,* 782 F. Supp. 110 (M.D. Ga. 1992).

The Alabama Supreme Court has determined a policy, similar to the policy at issue in this case, to be ambiguous based on this sort of conflicting language purporting to insure

intentional torts and, at the same time, attempting to exclude coverage for intentional torts, as

discussed in *Titan Indem. Co. v. Newton,* 39 F. Supp. 2d 1336, 1344-45 (N.D. Ala. 1999):

> The language of the policy does preclude coverage for intentional
> acts, but it also specifically provides coverage for acts of malicious
> prosecution, assault and battery, wrongful entry, piracy and other
> offenses that require proof of intent. Further, the policy specifically
> provides for coverage brought under the Federal Civil Rights Act.
> The conflict between these provisions creates an inherent
> ambiguity within the policy, and it is well settled in this state that
> when there is any doubt as to whether insurance coverage exists
> under a policy, the policy must be construed for the benefit of the
> insured.  (*Riley* I) 641 So.2d at 768 (citations omitted). The court
> went on to hold, "Because the policy is ambiguous on its face, we
> must construe it against Titan and conclude that Titan must defend
> the defendants on the claims against them." *Id*.
>
> A corollary to the ambiguity doctrine is the illusory coverage
> doctrine. Alabama recognizes this general law that the language or
> interpretation of an ambiguous provision by an insurance company
> may be so tortured as to result in "illusory" coverage. *See
> Industrial Chemical Fiberglass Corp. v. Hartford Acc. Indem. Co.,*
> 475 So.2d 472, 478-79 (Ala. 1985). A recent decision by a Florida
> Appellate Court, styled *Purrelli v. State Farm and Cas. Co.*, 698
> So.2d 618 (Fla. 2d Dist.Ct.App. 1997), provides an excellent
> example of the application of the doctrine. In *Purrelli*, a
> chiropractor was sued for invasion of privacy for allegedly taking
> inappropriate videos of a female employee, who was also a patient,
> during treatment sessions. State Farm, the insurer sought a
> declaratory judgment that it was not required to provide coverage.
> In resolving the issue, the court was called upon to construe a
> personal umbrella liability policy which limited insurance coverage
> to "accidents" resulting in "personal injury." The policy defined
> personal injury to explicitly include "invasion of privacy and
> eleven other intentional torts although it also contained a
> provisions excluding personal injuries that were `expected or
> intended' by the insured." It was, as the court noted, a policy that
> "purports to insure invasion of privacy, an intentional tort, but
> excludes acts "intended" by the insured and limits coverage to
> "accidents."" In concluding that there was coverage, the court
> noted
>
> The Maryland Court of Appeals held that

> conflicting provisions in a personal umbrella liability policy similar to Purrelli's could not be reconciled because the limitation and exclusion completely swallowed up the insuring provision creating the "grossest form of ambiguity." When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. As one court observed, an insurance policy that provides coverage for specifically enumerated intentional torts, but only if they are committed unintentionally is "complete nonsense." Id. at 619 (citations omitted).

*Titan Indem. Co. v. Newton,* 39 F. Supp. 2d 1336, 1344-45 (N.D. Ala. 1999).

**The Sexual Misconduct Exclusion Does Not Apply to the Distinct Claims of False Imprisonment and Invasion of Privacy.**

A.B.'s allegations against David Barrow involve interactions that occurred over several months during the years of 2013 and 2014. These actions involve Barrow's taking photos of A.B. at a house insured by Nationwide and at a hotel.

A.B. anticipates that the evidence at trial will show distinct instances where Barrow either unlawfully detained A.B. or invaded her privacy, separate and apart from the allegations of sexual abuse and molestation.

If this Court chooses to look outside of the law of Alabama, the court in *W. Protectors Ins. Co. v. Shaffer* , 624 F.Supp.2d 1292, 1302 (W.D. Wash. 2009) applied the same rationale suggested herein by holding that invasion of privacy claims did not clearly fall within the sexual abuse exclusion for the purposes of summary judgment in an insurer's declaratory judgment action, because the plaintiff (insurance company) had "failed to show that it is clear that every act by Mr. Shaffer involved sexual abuse, sexual exploitation, or something similar."

Similarly, it would be premature for this Court, at this juncture, to determine that

Nationwide does not owe a defense to its insured based on the sexual misconduct exclusion.

**"Prompt Notice" of a Claim is a Question of Fact:   "a trier of fact must determine whether, under the circumstances, it was reasonable for the [insureds] to wait four years to notify State Farm of a possible loss."** *State Farm Fire & Casualty Co. v. GHW***, 56 F. Supp. 3d 1210, 1222 (N.D. Ala. 2014).**

The Supreme Court of Alabama has explained the purposes of notice-of-occurrence and

notice-of-suit requirements:

> The purposes behind these two types of notice is [sic] well settled: An insurer must have timely notice of an event or occurrence in order to form an intelligent estimate of its rights and liabilities under the policy, to afford it an opportunity to investigate, to allow it to participate in the litigation, and to prevent fraud. The purpose of a notice-of-lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges.

*Travelers Indem. Co. of Conn. v. Miller,* 86 So. 3d 338, 347 (Ala. 2011) (internal citations omitted).

> Under Alabama law, "as soon as practicable" means "'within a reasonable time' in view of all the facts and circumstances of the case." *State Farm Mut. Auto. Ins. v. Burgess*, 474 So. 2d 634, 636 (Ala. 1985). And the court can only consider two factors "in determining the reasonableness of a delay in giving notice to an insurer: the length of the delay and the reasons for the delay." *Travelers Indem. Co. of Conn.*, 86 So. 3d at 342. **Notably, prejudice to the insurer is not a factor in the reasonableness of the delay under Alabama law.** *See S. Guar. Ins.*, 334 So. 2d at 883 ("[W]hether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer . . . .").

*State Farm Fire & Casualty Co. v. GHW*, 56 F. Supp. 3d 1210 (N.D. Ala. 2014) (*emphasis added).*

**PRAYER FOR RELIEF**

A. B. moves this Court for an Order as follows:

a.      that this Court dismiss, without prejudice, Nationwide's Declaratory Complaint to

the extent that it seeks a determination concerning indemnity;

b.      that this Court issue an Order finding that Nationwide owes the duty to defend A.

B.'s claims against David Barrow as to the covered personal injury claims of false

imprisonment and invasion of privacy;

c.      that this Court enter an Order finding that Nationwide had prompt or timely notice

of the claims made against its insured;

d.      and, that A. B. be informed of the due date for filing an Answer to the remaining

portions of Nationwide's Complaint for Declaratory Judgment and, at least, 14

days from the date of this Court's Order.


                                        /s/Gregory A. Reeves
                                        ASB-8179-E57G
                                        Attorney for A.B.

The Reeves Law Firm
232 Moulton St E
Decatur, AL 35601

256.355.3311
greg@reeveslaw.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing instrument upon the following, CM/ECF, unless indicated otherwise, this the 15th day of August, 2019.

David Henderson
Felicia Long
Attorneys for Nationwide, et. seq.

David Barrow
(via email to his Counsel, Gerald Paulk)

Ann Barrow
*Ms. Barrow's Counsel, George Barnett, has stated that they decline notice of further pleadings in this cause.*

s/ Gregory A. Reeves